## *Lessee of Charles Coxe *et al. against* John [*429 Ewing, James Ryland, John Ryland, Henry Stroup and Felix Miller.

Mentioning an improvement in an application is mere matter of description; and a party abandons his equity of improvement by not paying back interest from the time of its commencement.

Evidence of improvements in such case will be overruled; but they may be received, to shew that the survey of the adverse party was invalid.

Depositions taken under a commission not received in evidence, notice of filing the interrogatories not being served on the adverse party at least 15 days before issuing the commission.

A person interested in the question may be a witness to prove the identity of blocks taken from marked trees.

EJECTMENT for 560 acres of land on the south side of Juniata.

The plaintiff claimed under a warrant to Gabriel Peterson, for 200 acres of land, on the south side of Juniata, including two Deer Licks, about four miles below the mouth of Yellow creek, dated 20th September 1762; also, under another warrant to Samuel Johnston, dated 25th October 1765, including part of Gabriel Peterson's improvement, and adjoining land granted to the said Peterson, below the mouth of Yellow creek, whereon interest was to commence from the 1st March 1760.  A survey without date, of 560 acres, was made by Richard Tea, D. S., said therein to be six miles below the mouth of Yellow creek, which was returned into the surveyor general's office on the 19th March 1791.

No evidence was given of Peterson's improvement, nor of any remarkable Deer Licks on the land; though it was shown that there were several saltish ponds in the different bends of Juniata.

The defendants claimed under two ancient settlements made in 1763 or 1764, by William Sparkes and Robert Friggs, regularly continued to the present time, when uninterrupted by Indian hostilities.  They also claimed under the following legal titles:

An application in the name of the said William Sparkes dated 6th February 1767, for one hundred acres on the south side of the Raystown Branch of Juniata, including his improvement; upon which a survey of 108 acres and 46 perches was made on the 3d August 1786 by George Woods, and a patent dated 24th November 1787, was issued thereon to Phillip Stoner, in consideration of 15l. 3s. Pennsylvania currency.

Also an application in the name of Robert Friggs, dated 2d

[Coxe et al. Lessee of, *v.* Ewing et al.]

March 1767, for 200 acres on the Raystown Branch of Juniata including his improvement, between Frederick Founder and William Sparkes ; upon which a survey was made in the summer of 1777 by Thomas Smith, and a patent dated 4th March 1797, was issued to Henry Shoup executor of Sebastian Shoup to and for the uses declared in his will.

Also a warrant in the name of Phillip Stoner, dated 26th October 1773, for 100 acres adjoining his other land on the south side of the Raystown Branch, and a conditional line made between William Sparkes and Robert Friggs, upon which 8l. 6s. was paid on the same day into the office of the receiver general.

\*430]          \*The counsel for the defendants having given in evidence to the jury the legal titles aforesaid upon which they relied, offered to shew by parol testimony the actual settlements of the aforesaid William Sparkes and Robert Friggs, commenced in 1763 or 1764, and continued without intermission, unless when the inhabitants were driven from their habitations by the alarms of the savages.

This testimony was excepted to on the part of the plaintiff. The applications of Sparkes and Friggs filed in 1767, do not subject them to pay interest from the times of their supposed improvements respectively.  By filing them, they severally abandon *ipso facto* all equity under their settlements.  It has frequently been determined, both at *Nisi Prius* and in the Circuit Courts, that no man shall be permitted to defraud the late proprietaries or the commonwealth, by not ascertaining truly the time of his improvement in his warrant, and retain his right of pre-emption from an earlier period, than he has himself stated.  The courts have said, that overruling such evidence, tends to good morals ; and the present case is within the principle of all the decisions on the subject.

The defendants' counsel answered ; interest is never calculated back on applications.  The practice of filing them first obtained in the proprietary land office in 1766, at which time the consideration money to be paid for taking up lands, was charged from 15l. 10s. currency for every hundred acres, and one half penny sterling per acre, to 5l. sterling per 100 acres, and one penny sterling quit rent per acre.

It would be highly unjust, that one should suffer in his claim to lands by reason of his conformity to the regulations of the proprietary officers, over whom he had no controul.  The parties here mentioned their respective improvements, and cannot therefore be supposed to have abandoned them.  The cases which have been decided, have been in the instances of warrants, wherein no improvements have been stated ; or if stated, the times of making them have been fraudulently postponed, which forms an essential difference between those cases and the present.  Besides, this testimony is offered in behalf of defend-

ants, who may shew a title in any stranger, to preclude the plaintiff from recovering the lands in dispute.

The plaintiff replied; notwithstanding the introduction of applications in 1766, the practice of taking out warrants to secure prior pre-emption rights was not thereby supposed. Of this we offer three instances to the court, which have been discovered *in the office of the deputy surveyor of this district on a slight search since this argument begun. [These war- [*431 rants for lands on the west side of the Susquehannah were produced, wherein improvements were called for severally dated in 1767, interest to commence from previous periods.] To this practice Sparkes and Friggs should have honestly conformed, if they meant to secure their rights by improvements, and fairly pay for them to the paramount lords of the fee. Mentioning an improvement in an application is mere matter of further description, and has always been so understood. Nothing is more certain, than that a change in the mode of obtaining an office right in general cases, cannot vary the rights of the owners of the land, or discharge a party, who by uniform usage was bound to pay interest from the time of his improvement from such obligation. Such a change in the relative duties of individuals, could never have been intended by the late proprietaries; nor did they so readily part with their interests.

By THE COURT. The present case is certainly allied in point of principle to our former decisions on this subject; and in some of these cases testimony of a similar nature has been overruled, though offered on the part of the defendants. Whether applications filed should be distinguished from warrants in the particular under consideration is now to be determined. The regulations of the land office in 1766, seem to have blended the proprietary interests with those of the poorer class of the community, who might not have ready cash to advance for the purpose of taking out warrants, but who by the addition of their labour to the value of the soil, would give a permanent security for the payment of the consideration money. The new institutions however, cannot be regarded as a variation of the rights of the proprietaries, or the duties of individuals; and I concur in opinion with the plaintiff's counsel, that the insertion of an improvement in an application is nothing more than a designation of the place intended to be located. The instances produced of warrants taken out in 1767, with others which I recollect to have seen of the like kind, evince to me fully, the mode of procedure, when improvements previous thereto were intended to be secured. The old consideration and quit-rents are specified therein, as the terms on which such warrants issued.

It follows therefore that such improvements cannot be adduced to establish a title to the lands anterior to such application. But may they not be given in evidence to shew that the plaintiff's survey could not legally take effect? The time of

making it is not inserted in the return, which is a suspicious circumstance, and a departure from the uniform method pursued *432] in such cases.   *Johnston's warrant was dated in October 1765 ; and the surveys on both warrants having been made at the same time, it must necessarily have been done after that period.   But such a survey, if it included the real *bona fide* settlements of third persons, would not have received the sanction of the land office, or of the country, from their uniform usages.   It is true that by going into this testimony, the defendants will derive a degree of benefit from improvements, the equity of which they seem to have abandoned ; but this appears inevitable, and flows as a necessary consequence from the investigation of the validity of the survey made for the plaintiffs.   In this point of light, I view the evidence as admissible.

The counsel for the plaintiff desired that the point might be noted, and reserved for further discussion, if it should become necessary, which was accordingly done.

The testimony was fully gone into, and the facts opened by the defendant's counsel, were clearly established thereby.

The defendant's counsel offered in evidence the deposition of George Nagel, taken under a commission issued to the state of Ohio.

This was objected to, because the 44th rule of practice in the Circuit Court is, that written notice of the commission should have been served on the adverse party at least fifteen days before the commission issued ; which was not complied with in the present instance.

It appeared, upon examination, that the interrogatories were filed on the 28th September 1805 ; notice given thereof on the 30th September and the commission issued on the 14th October 1805.

The court considered the commission as having improvidently issued, and suppressed the deposition.

Several marked trees were blocked on the different lines claimed by the contending parties, and evidence was given to the jury of the ages of those marks, from the annual growth of trees ; the jury however were desirous of seeing the blocks of those trees in order to account the growth for themselves. Whereupon Henry Putt was offered to prove that the blocks, which he produced in court, were those which had been cut from the trees by the order of William Piper the surveyor.

*He was objected to, as an interested witness, it being   [*433 acknowledged, that he claimed and was in the actual possession of lands, holding under the survey, set up by the plaintiff.

*Sed per Cur.*   He is adduced as a witness to the court, to prove a collateral fact, viz. the identity of certain blocks, which being

established to their satisfaction, the blocks are permitted to go to the jury for their inspection. This is analogous to proving where certain papers were found, or the entries in a day book, which may be done by a party to the suit. Besides, is not Putt a competent witness on legal principles? He may be interested in the question now trying, but cannot be affected by the event of this suit. The objection according to the modern decisions, which we have adopted, goes merely to his credibility.

At the instance of the defendants' counsel, this point was also reserved for future discussion.

Verdict for the defendants.

Messrs. Duncan, Woods and Brown, *pro quer.*

Messrs. J. and S. Riddle, *pro def.*

Referred to in 1 S. & R. 132.
Distinguished in 1 W. & S. 495.

## DECEMBER TERM 1807, AT PHILADELPHIA.

### FOR THE EASTERN DISTRICT.

CORAM—TILGHMAN, CHIEF JUSTICE, YEATES, SMITH AND BRACKENRIDGE, JUSTICES.

# Road in East and West Nantmill townships, in Chester county.

A *certiorari* to remove a road, must set out its beginning and ending, otherwise it will be quashed.

CERTIORARI directed to the Court of General Quarter Sessions of the peace of Chester county, to remove all proceedings respecting a road, beginning at a road leading from John Root's to Thomas Bull's mill, and extending to the Conestogoe road.

Mr. Frazer, in behalf of the road, moved to quash the *certiorari.* It does not describe the road applied for and confirmed. *Its beginning only is set forth, which is an imperfect description. It appears by the record, that the road pe- [*434 titioned for, begins on lands late of John Root, deceased, at the road leading from Bull's mill, in East Nantmill, to the little Conestogoe road, near James Cubertson's in West Nantmill, thence by the dwelling house of Tedlinger, to the road leading from Jones's tavern to Pawling's ferry on Schuylkill. It is therefore utterly defective, and could not legally remove the proceedings. For much smaller errors have *certioraris* been quashed. 1 Salk. 145, pl. 4. 146, pl. 9. 151, pl. 21.

Mr. T. Ross, *e contra,* contended, that the present application came too late, the *certiorari* being returnable to March term 1806. The sessions understood the writ directed to them, and have returned the record.